# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

CHET EDWIN MERCER,

        Movant,

        v.

UNITED STATES OF AMERICA,

        Respondent.

Civil No. 25-05020-CV-SW-MDH-P
Crim. No. 21-05051-01-CR-SW-MDH

## GOVERNMENT'S SUGGESTIONS IN OPPOSITION
## TO MOVANT'S MOTION UNDER 28 U.S.C. § 2255

The respondent, the United States of America, respectfully requests that this Court deny Chet Edwin Mercer's 28 U.S.C. § 2255 motion seeking to vacate his convictions and sentences.

Mercer pleaded guilty to possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking offense. This Court sentenced Mercer to 144 months' imprisonment. Mercer did not appeal. Mercer, who is incarcerated at the federal correctional institution in Texarkana, Texas, has now filed a motion seeking to vacate his conviction or sentence under § 2255.

Mercer contends that his counsel was ineffective during plea negotiations, during the sentencing, and for failing to file an appeal. A review of the claims reveals that Mercer has failed to demonstrate both deficient performance and prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984). Because Mercer's claims are contrary to

the record and legally insufficient to command relief, this Court should deny his motion

without holding an evidentiary hearing and deny a certificate of appealability.

## I. Factual and Procedural History

### A. *Factual History*

On March 11, 2021, law enforcement executed a search warrant at Mercer's

residence in Webb City, Missouri, after receiving information that Mercer was distributing

methamphetamine.[1] While searching Mercer's bedroom, officers located approximately

two grams of methamphetamine; a loaded Glock 21, .45 caliber handgun; a 26-round

extended magazine; and a safe containing $4,895. Inside the office of the residence,

officers located approximately four grams of methamphetamine. In a living room air duct,

officers located approximately 667 grams of methamphetamine. Officers also recovered a

digital scale and plastic baggies, commonly used in drug distribution.

On November 19, 2021, a confidential informant purchased 100.1 grams of

98-percent pure methamphetamine from Mercer for $1,500. On November 30, 2021, law

enforcement executed a search warrant at Mercer's residence in Carl Junction, Missouri.

Officers recovered multiple shotgun shells; a Springfield Armory XP pistol, Serial

No. GM729470, which had been reported stolen on March 30, 2021; eight bottles of

sodium oxybate oral solution, a Schedule III controlled substance; 363.9 grams of

97-percent pure methamphetamine; 0.944 grams of 98-percent pure methamphetamine;

---

[1]The factual history is summarized from the stipulated facts in the plea agreement
and the undisputed facts in the presentence investigation report (PSR) without further
citation.

a Winchester 1400 semi-automatic 12-guage shotgun, Serial No. N541885; a digital scale; rolling trays; plastic baggies; miscellaneous drug paraphernalia; and $860. Inside Mercer's BMW automobile, officers located a Marlin .22 caliber LR rifle, Serial No. 00199208A. Officers also located a number of a stolen vehicles and vehicle parts.

Cooperating informants provided information that Mercer was buying and distributing large quantities of methamphetamine. The informants stated that that Mercer traveled to Oklahoma to purchase methamphetamine and detailed purchases of between one-quarter to two pounds of methamphetamine from Mercer.

**B.**     ***Procedural History***

On December 14, 2021, an indictment was returned charging Mercer with possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and possession of firearms by a restricted individual, in violation of 18 U.S.C. §§ 922(n), 921(a)(14), and 924(a)(1)(D) (Count Three). (Crim. Doc. 14.)[2]

On October 12, 2023, Mercer pleaded guilty to Counts One and Two pursuant to a plea agreement with the Government. (Crim. Doc. 54, 55, 72.) The plea agreement contained a factual basis for the guilty plea. (Plea Agrmt. 2.) Through the plea agreement, Mercer agreed to the sentencing procedures to be utilized by this Court, including the use

---

[2]"Doc." refers to the docket entry number in the § 2255 case, *Mercer v. United States*, No. 25-05020-CV-SW-MDH-P. "Crim. Doc." refers to the docket entry number in the criminal case, *United States v. Mercer*, No. 21-05051-01-CR-SW-MDH.

of relevant conduct; the statutory range of punishment for the offenses; the calculation of the advisory Sentencing Guidelines range; the preparation of the PSR; and the stipulated Sentencing Guidelines provisions. (Plea Agrmt. 3-8.) Mercer waived his constitutional rights to a jury trial and waived his rights to appeal or collaterally attack his conviction or sentence with certain exceptions. (Plea Agrmt. 9-10.) Mercer averred that he was entering into the plea agreement freely and voluntarily; that he was satisfied with his defense counsel's assistance; that he was fully advised of his rights and obligations in connection with the plea agreement; and that no threats or promises, other than the promises contained in the plea agreement, had been made to induce his guilty plea. (Plea Agrmt. 11.) Mercer executed the plea agreement on October 6, 2023. (Plea Agrmt. 13.)

At the outset of the change-of-plea hearing, this Court placed Mercer under oath. (Plea Tr. 3.) This Court established that Mercer could read and write and had entered into a written plea agreement with the Government. (Plea Tr. 4.)

Mercer again averred that he was entering into the plea agreement freely and voluntarily; that he was satisfied with his defense counsel's assistance; that he was fully advised of his rights and obligations in connection with the plea agreement; and that no threats or promises, other than the promises contained in the plea agreement, had been made to induce his guilty plea. (Plea Tr. 5.) Mercer stated that he understood the legal issues regarding his guilty plea. (Plea Tr. 5-6.) Mercer stated that he had discussed the plea agreement in detail with counsel and that counsel had answered all Mercer's questions regarding the agreement. (Plea Tr. 6.) Mercer stated that no person had threatened him or

attempted to persuade him to plead guilty, and that his guilty plea and entry into the plea agreement was voluntary and in his best interest. (Plea Tr. 6-7.)

Mercer established that he was physically and mentally competent to plead guilty. (Plea Tr. 7.) Mercer acknowledged the statutory range of punishment for the offenses and the sentencing procedures used by this Court. (Plea Tr 7-10.) Mercer waived his constitutional rights to a jury trial. (Plea Tr. 11-12.) Mercer also waived his right to appeal or collaterally attack his conviction or sentence with certain exceptions. (Plea Tr. 12-13.) Mercer stated he had personally reviewed the factual basis in the plea agreement and conceded that it was accurate. (Plea Tr. 13-14.) This Court then accepted Mercer's guilty pleas. (Plea Tr. 14-15.)

On January 24, 2024, a revised PSR was issued. (Crim. Doc. 58.) The PSR contained a recitation of the offense conduct. (PSR ¶¶ 4-21.) The PSR calculated a drug amount of more than 4.5 kilograms of methamphetamine (actual). (PSR ¶¶ 21, 27.) The PSR calculated a base offense level of 38 under U.S.S.G § 2D1.1(a)(5); applied a two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance; and applied a three-level reduction under § 3E1.1(a) and (b) for acceptance of responsibility; yielding a total offense level of 37. (PSR ¶¶ 27-36.) The PSR calculated a criminal history score of two, yielding a criminal history category of II. (PSR ¶¶ 37-67.) This resulted in a statutory range of punishment of five to 40 years for Count One; an advisory Sentencing Guidelines range of 235 to 293 months for Count One; and a statutory consecutive sentence of five years to life on Count Two. (PSR ¶¶ 99-101.)

Mercer objected to the drug quantity calculation derived from cooperating witness statements; the enhancement for maintaining a premises to distribute a controlled substance; and the calculation of the criminal history score. (PSR Adden. Jan. 24, 2024.) Defense counsel also filed two sentencing memoranda prior to the sentencing hearing, discussing the statutory sentencing factors under 18 U.S.C. § 3553(a). (Crim. Doc. 51, 55.)

On February 29, 2024, Mercer appeared for sentencing. (Crim. Doc. 68, 73.) This Court explained the sentencing hearing process to Mercer. (Sent. Tr. 2-4.) Mercer confirmed that he had read and discussed the PSR with his counsel. (Sent. Tr. 4.) This Court noted the statutory range of punishment for the offenses. (Sent. Tr. 4-5.) This Court accepted the Government's motion for a downward departure based on Mercer's attempt to provide substantial assistance. (Sent. Tr. 5-6.) This Court took up the criminal history score calculation objection, finding that the challenged offense was within the period to qualify. (Sent. Tr. 6-9.) This Court overruled the drug quantity calculation based on Mercer's own statement that he had obtained multiple pounds of methamphetamine during the conspiracy. (Sent. Tr. 9-10.) This Court stated its disagreement with the enhancement for maintaining a premises, noting that the enhancement was overinclusive, and sustained that objection. (Sent. Tr. 10-11.) This resulted in a final offense level of 35, a criminal history category of II, and an advisory range of 188 to 235 months for Count One. (Sent. Tr. 11.)

The Government recommended a sentence of 144 months for Count One, 60 months consecutive for Count Two, for a total sentence of 204 months. (Sent. Tr. 11-12.) Defense counsel discussed the statutory sentencing factors, including Mercer's behavior while on

pretrial release; his participation in drug rehabilitation programs; his spiritual growth and volunteer work at church; and his joint custody of his child. (Sent. Tr. 12-15.) Counsel requested this Court impose a sentence of 60 months for Count One and 60 months for Count Two, for a total of 120 months. (Sent. Tr. 15.) Defense counsel addressed Mercer's post-arrest statements and his unsuccessful attempts to provide cooperation against his source of supply. (Sent. Tr. 16-20.) Mercer personally addressed this Court and read a prepared statement. (Sent. Tr. 22-24.) Mercer also addressed some of the sentencing factors discussed by counsel and this Court. (Sent. Tr. 24-28.)

This Court discussed the statutory sentencing factors it considered in determining the sentence. (Sent. Tr. 29-33.) This Court then sentenced Mercer to 84 months for Count One, and 60 months consecutive for Count Two, for a total sentence of 144 months' imprisonment. (Sent. Tr. 33; Crim. Doc. 69 at 2.)

Mercer did not appeal.

## II. **Argument and Authorities**

Mercer has now filed a motion under § 2255 raising various claims of ineffective assistance of counsel.[3]

### A. **_Legal Standard_**

"In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner." _Kress v. United States_, 411 F.2d 16, 20 (8th Cir. 1969). Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings requires a § 2255 motion

---

[3]The Government does not dispute that the motion, though without merit under the law, is timely under 28 U.S.C. § 2255(f)(1).

to "state the facts supporting each ground for relief" specified in the motion. "[V]ague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255." *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986); *see also Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (per curiam) (holding that "a conclusory allegation, unsupported by specifics . . . was a proper subject for summary dismissal"). Such allegations also fail to warrant an evidentiary hearing. *United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. 1995) (explaining that "vague and conclusory" allegations that defense counsel coerced a guilty plea did not warrant an evidentiary hearing).

Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): "To obtain relief on a claim of ineffective assistance of counsel, a prisoner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense." *Haney v. United States*, 962 F.3d 370, 373 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 687).

As to the "deficiency" prong, a defendant must show that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." *United States v. Ngombwa*, 893 F.3d 546, 552 (8th Cir. 2018) (quoting *Long v. United States*, 875 F.3d 411, 413 (8th Cir. 2017) (internal quotation marks omitted)). "[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Counsel's "strategic decisions made after a thorough investigation of law and facts . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Whether a court agrees with

a defense counsel's strategy or analysis in hindsight is not the test to be followed. *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (citing *Wing v. Sargent*, 940 F.2d 1189, 1191-92 (8th Cir. 1991)).

As to the "prejudice" prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *O'Neil v. United States*, 966 F.3d 764, 771 (8th Cir. 2020) (internal quotation marks omitted). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at 694). "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, *id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To establish ineffectiveness regarding the entry of the plea, a movant must show that "there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59; *see also United States v. Sisk*, 999 F.3d 631, 635 (8th Cir. 2021). A defendant must also show he would have been better off going to trial "when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error." *Lee v. United States*, 582 U.S. 357, 365 (2017). To establish prejudice regarding the sentence, a defendant generally must show a reasonable probability that, but for counsel's errors, the defendant would have received a more favorable sentence, *see Puckett v. United States*, 556 U.S. 129,

142 n. 4 (2009), "'render[ing] the result of the [sentencing] proceeding fundamentally unfair.'" *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (quoting *Strickland*, 466 U.S. at 687).

## B. *Mercer's Claims Are Without Merit*

### 1. *Counsel Was Not Ineffective During the Pre-Plea Proceedings*

In the first ground, Mercer presents several claims challenging his counsel's representation prior to the guilty plea. (Doc. 1 at 4; Doc. 4 at 2, 12-23.)[4]

Mercer waived the claims through his knowing and voluntary guilty plea. "A guilty plea waives all defects except those that are jurisdictional." *United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008) (internal quotation omitted); *see also Walker v. United States*, 115 F.3d 603, 604 (8th Cir. 1997) ("[A] valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence.") (internal quotation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Instead, such a movant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [*McMann v. Richardson*, 397 U.S. 759 (1970)]." *Id.*

---

[4]It appears that when the document was processed, a blank page was inadvertently scanned, which has altered the page numbers. (Doc. 4 at 13.) The Government's citations reference the page numbers assigned by ECF, not the page numbers of the documents themselves.

The record of the proceeding demonstrates that Mercer's guilty plea was knowing and voluntary. While under oath, Mercer averred that he was entering into the plea agreement freely and voluntarily; that he was satisfied with his defense counsel's assistance; that he was fully advised of his rights and obligations in connection with the plea agreement; and that no threats or promises, other than the promises contained in the plea agreement, had been made to induce his guilty plea. (Plea Tr. 5.) Mercer stated that he understood the legal issues regarding his guilty plea. (Plea Tr. 5-6.) Mercer stated that he had discussed the plea agreement in detail with counsel and that counsel had answered all Mercer's questions regarding the agreement. (Plea Tr. 6.) Mercer stated that no person had threatened him or attempted to persuade him to plead guilty, and that his guilty plea and entry into the plea agreement was voluntary and in his best interest. (Plea Tr. 6-7.) Mercer established that he was physically and mentally competent. (Plea Tr. 7.) Mercer acknowledged the statutory range of punishment for the offenses and the sentencing procedures used by this Court. (Plea Tr 7-10.) Mercer waived his constitutional rights to a jury trial. (Plea Tr. 11-12.) Mercer also waived his right to appeal or collaterally attack his conviction or sentence with certain exceptions. (Plea Tr. 12-13.)

Even if Mercer had not waived his claims through his knowing and voluntary guilty plea, Mercer has failed to identify any specific failing by counsel that constitutes ineffective assistance of counsel.

Mercer contends that counsel failed to communicate and inform Mercer of the consequences of pleading guilty. (Doc. 4 at 12-14.) The only specific consequence Mercer identifies is counsel's purported failure to accurately advise him of his eligibility for

benefits under the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5208. (Doc. 4. at 15.) Under the law, a defendant need only be advised of the statutory range of punishment for the offense. *See*, *e.g.*, *United States v. Quiroga*, 554 F.3d 1150, 1155-56 (8th Cir. 2009); *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006). Mercer was advised both in the plea agreement and during the change-of-plea hearing of the statutory range of punishment. (Plea Agrmt. 3; Plea Tr 7-10.) Therefore, his complaint about the accuracy of advice he received regarding his eligibility for post-incarceration prison programs does not constitution ineffectiveness.[5]

Mercer contends that counsel coerced him to plea guilty. (Doc. 4 at 15.) But Mercer's sworn statements during the change-of-plea hearing contradict his claim. Statements made by a defendant in court under oath should not be lightly set aside and "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Ingrassia v. Armontrout*, 902 F.2d 1368, 1370 (8th Cir. 1990) (representations made during the plea hearing "carry a strong degree of verity and pose a formidable barrier in any subsequent collateral proceedings"); *United States v. Harris-Thompson*, 751 F.3d 590, 603 (8th Cir. 2014) (allegations that contradict prior

---

[5]Collateral consequences of a guilty plea need not be disclosed to the defendant prior to the guilty plea. *See George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984); *Hill v. Lockhart*, 474 U.S. 52, 60 (1985); *see also Padilla v. Kentucky*, 559 U.S. 356, 365 n.8 & 376 (2010) (recognizing civil commitment, civil forfeiture, sex offender registration, disqualification from public benefits, disfranchisement, ineligibility to possess firearms, dishonorable discharge from the Armed Forces, and the loss of business and professional licenses as collateral consequences that need not be disclosed).

statements at the time of arrest, at the proffer interview, in the plea agreement, and at the change of plea hearing are "inherently unreliable").

Mercer contends that counsel deprived him of his right to be involved in the plea negotiations and developing trial defenses. (Doc. 4 at 16.) But Mercer has not identified how his greater involvement in the plea negotiation process, if such involvement could be attained, would have resulted in a more favorable outcome. Mercer entered into a cooperation agreement with the Government and received a substantial downward departure because of his guilty plea and attempted cooperation. No better plea agreement was forthcoming. Mercer has not identified any trial defense that counsel failed to consider, that Mercer would have recognized, and that would have resulted in a reasonable probability of an acquittal. Indeed, the evidence in this case, including Mercer's own statements regarding his drug trafficking, was overwhelming.

These claims are contrary to the record and conclusory allegations. Because the claims fail under the law and are without merit, this Court should deny the claims.

2.    <u>*Counsel Was Not Ineffective During the Sentencing Proceedings*</u>

In the second ground, Mercer contends that counsel was ineffective during the sentencing proceedings. (Doc. 1 at 4; Doc. 4 at 23-28.)

Mercer contends that counsel failed to review and explain the PSR to Mercer. (Doc. 4 at 22-23.) At the start of the sentencing hearing, this Court explained the process to Mercer. (Sent. Tr. 2-4.) This Court asked Mercer if he had read and discussed the PSR with his counsel, and Mercer confirmed he had. (Sent. Tr. 4.) Mercer's claim that counsel was ineffective for failing to explain the PSR is contrary to his own statements at the

sentencing hearing. Additionally, Mercer's claim is a conclusory allegation. Mercer points to no fact from the PSR that counsel failed to explain and has not demonstrated prejudice resulting from that lack of explanation. Mercer cites only a single case for the general proposition that defense counsel must review the PSR with a client and suggests that counsel's performance was below the standard. (Doc. 4 at 23.) This again is a conclusory allegation and insufficient to meet the *Strickland* standard.

Mercer next contends that counsel was ineffective failing to file objections to the PSR. (Doc. 4 at 23-25.) The record demonstrates that counsel did file appropriate objections to the PSR. (PSR Adden. Jan. 24, 2024.) This Court litigated those objections during the sentencing hearing, and the objection to the maintaining a premises for drug distribution was sustained. (Sent. Tr. 6-11.)

Mercer contends that counsel should have objected to the purity of the methamphetamine used to determine the base offense level. (Doc. 4 at 23-25.) Mercer's objection is not related to the factual determination of the purity, but rather, that the use of methamphetamine purity in general to calculate the base offense level. (Doc. 4 at 23-25.) Mercer points to cases involving a downward variance from the Sentencing Guidelines based on a policy disagreement with the use of methamphetamine purity to determine the base offense level. (Doc. 4 at 23-25.)

The Eighth Circuit "ha[s] frequently stated that while a district court may vary from the Guidelines based on a policy disagreement, it is not required to do so." *United States v. Ellis*, 129 F.4th 1075, 1982 (8th Cir. 2025) (quoting *United States v. Noriega*, 35 F.4th 643, 652 (8th Cir. 2022)). Mercer has not demonstrated that this Court would have granted

a variance from the Guidelines based on a policy disagreement. Mercer received a very lengthy downward departure based on his substantial assistance with the Government. When determining the sentence, this Court discussed the statutory sentencing factors at length that supported the sentence. (Sent. Tr. 29-33.) While this Court is in the best position to determine whether it would have considered a further reduction based on a policy disagreement, the record demonstrates the argument would have been futile. Further, while recognizing that some district courts have endorsed a policy disagreement based on the purity of the methamphetamine, the Government is unaware of a single case from the Western District of Missouri where a district court endorsed that policy disagreement.

Mercer next faults counsel for failing to raise a *Rehaif* defense to the firearm charge. (Doc. 4 at 25.) Mercer contends that his firearm conviction prevents him from receiving certain benefits under the First Step Act and counsel should have objected to at sentencing under *Rehaif.* (Doc. 4 at 25.) *Rehaif* is a Supreme Court case addressing the elements for the crime of being a prohibited person in possession of a firearm. *Rehaif v. United States*, 588 U.S. 225, 237 (2019) ("[I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."). Because *Rehaif* has no applicability to Mercer's conviction under § 924(c), no sentencing objection based on *Rehaif* would have been successful. Counsel may not be deemed ineffective for failing to raise a legally frivolous argument.

Finally, regarding counsel's sentencing performance, Mercer contends that counsel failed to present a mitigation argument in support of a lesser sentence. (Doc. 4 at 27-28.)

Mercer contends that counsel failed to discuss his post-conviction rehabilitation, which Mercer asserts can be considered during resentencing based on Supreme Court case law. (Doc. 4 at 27.) Mercer points to various programs he has participated in while incarcerated, his current truck-driving job within the Bureau of Prisons, and his general infraction free behavior while incarcerated. (Doc. 4 at 27-28.) Mercer contends that counsel should have raised these facts at his original sentencing hearing, and counsel's failure deprived Mercer of a more favorable outcome. (Doc. 4 at 28.)

Axiomatically, counsel may only raise sentencing arguments based on facts known at the time of the sentencing hearing. An attorney is not expected to predict what programs Mercer would complete, what job he would be assigned, and how he would behave after he is received into Bureau of Prisons custody. And contrary to his assertion, defense counsel presented a lengthy sentencing argument, discussing rehabilitation facts that occurred after Mercer's guilty plea but prior to sentencing, including Mercer's behavior while on pretrial release; his participation in drug rehabilitation programs; his volunteer work at his church; and his joint custody of his child. (Sent. Tr. 12-15.) Mercer's claims are contrary to the record and rely upon an erroneous view of the applicable law. Because the claims fail under the law and are without merit, this Court should deny the claims.

### 3. *Counsel Was Not Ineffective for Failing to Appeal*

In the second ground, Mercer also contends that counsel failed to file an appeal after sentencing. (Doc. 1 at 5; Doc. 4 at 28-31.) Mercer does not contend that he instructed counsel to appeal, and that counsel failed to follow that express instruction. Rather, Mercer contends that counsel failed to advise him regarding the scope of the appeal waiver and the

voluntariness of the waiver, depriving Mercer of his appellate rights (Doc. 4 at 28-31.) Mercer suggests his claim succeeds because nothing in the record demonstrates that he did not ask counsel to appeal. (Doc. 4 at 31.)

Mercer is correct that "[a]n attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required." *United States v. Sellner*, 733 F.3d 927, 930 (8th Cir. 2014). Nevertheless, a movant must show that he made his desire to appeal evident to his attorney. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) ("A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition.") (citation omitted); *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002) (same); *Roe v. Flores-Ortega*, 528 U.S. 470, 474 (2000) ("If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").

Additionally, there is no bright-line rule requiring counsel to consult with a defendant regarding an appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000). Counsel is required to consult with a "defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480; *see also Green v. United States*, 323 F.3d 1100, 1103 (8th Cir. 2003) (declining to consider claim that counsel failed to consult about appeal absent plain error resulting in miscarriage of justice;

finding none where movant received the lowest Guidelines sentence, counsel stated there were no grounds for appeal, and movant expressed no interest in appeal).

In this case, there was no reason to believe that Mercer would want to appeal. Mercer faced a statutory range of punishment of five to 40 years for Count One; an advisory Sentencing Guidelines range of 235 to 293 months for Count One; and a statutory consecutive sentence of five years to life on Count Two. (PSR ¶¶ 99-101.) The Government argued for a sentence of 144 months for Count One, a downward variance, and 60 months consecutive for Count Two, for a total sentence of 204 months. (Sent. Tr. 11-12.) Mercer's counsel requested a sentence of 60 months for Count One, an even greater downward variance, and 60 months for Count Two, for a total of 120 months. (Sent. Tr. 15.) This Court imposed a sentence of 84 months for Count One and 60 months for Count Two, a total of 144 months' imprisonment. (Sent. Tr. 33.) While this Court's variance was not as large as the one requested by Mercer, it was still far greater than that requested by the Government, and was roughly one third of the calculated advisory Sentencing Guidelines. Mercer's defense counsel has prepared an affidavit, attached to this response as Exhibit A, which demonstrated that Mercer did not request an appeal.

Mercer has failed to carry his burden under the applicable law. Mercer's failure to instruct counsel to file an appeal following his sentence is fatal to the claim. This Court should deny this claim without holding an evidentiary hearing.

**C.** _**An Evidentiary Hearing Is Not Required to Resolve the Claims, and this Court Should Deny a Certificate of Appealability**_

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." _Anjulo-Lopez v. United States_, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" _Id._ (quoting _Watson v. United States_, 493 F.3d 960, 963 (8th Cir. 2007)); _see also Allen v. United States_, 854 F.3d 428, 433 (8th Cir. 2017) (a § 2255 motion can be dismissed without a hearing if (1) a movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

As the preceding discussion makes clear, Mercer's claims are conclusory allegations, contrary to the record, and based on an erroneous reading of the applicable law. Because the claims are insufficient under the law, this Court should deny Mercer's motion without holding an evidentiary hearing.

A movant can appeal the denial of a § 2255 motion to the court of appeals only if this Court issues a certificate of appealability. _See_ 28 U.S.C. § 2253(c)(1)(B). To receive a certificate of appealability, a movant must demonstrate a substantial showing of the denial of a constitutional right or raise an issue that is debatable among jurists of reason or deserving of further proceedings. _See_ 28 U.S.C. § 2253(c)(2); _Slack v. McDaniel_, 529 U.S. 473, 484 (2000). Because Mercer's claims fail as a matter of law, and the merits of those

claims are not debatable among reasonable jurists or deserving of further consideration, this Court should deny a certificate of appealability.

### III.  <u>Conclusion</u>

For the foregoing reasons, the Government respectfully requests that this Court deny Mercer's § 2255 motion seeking to vacate his conviction and sentence.

Respectfully submitted,

JEFFREY P. RAY
Acting United States Attorney

By     */s/ JESSICA R. EATMON*       
Assistant United States Attorney
901 St. Louis Street, Suite 500
Springfield, Missouri  65806-2512
Telephone: (417) 831-4406

*Attorneys for Respondent*

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned hereby certifies that a copy of the foregoing was delivered on June 10, 2025, to the CM-ECF system of the U.S. District Court for the Western District of Missouri for electronic delivery to all counsel of record, and mailed to:

        Chet Edwin Mercer, *Pro Se*
        Reg. No. 76703-509
        FCI Texarkana
        P.O. Box 7000
        Texarkana, Texas  75505


                        */s/ Jessica R. Eatmon*
                        Jessica R. Eatmon
                        Assistant United States Attorney